UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       19-31-SDD-RLB

BRUCE AARON BOULTON

## RULING

This matter is before the Court on the *Motion for Reduction in Sentence and Compassionate Release*[1] filed by Defendant, Bruce Aaron Boulton ("Boulton"). The Government has filed an *Opposition*[2] to this motion. Because Boulton has presented no evidence of extraordinary and compelling reasons for his release under the First Step Act, this motion shall be denied.

**I.   BACKGROUND**

In May 2019, Boulton was sentenced to prison for a term of 51 months after he pled guilty to one count of mail fraud and one count of wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343.[3] Boulton reported to the BOP Facility FCI-Oakdale I in Oakdale, Louisiana (hereinafter "Oakdale"), on February 20, 2020 to begin serving his sentence. Just five months later, Boulton moved for a reduction in sentence and compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

---

[1] Rec. Doc. No. 47.
[2] Rec. Doc. No. 56.
[3] Rec. Doc. Nos. 1, 17, 18, 41, & 44.
Document Number: 62851                                                                 1

Boulton first complains that, subsequent to the initial COVID-19 pandemic outbreak, Warden R. Meyers at Oakdale posted notice in the prison of the "COVID-19 Home Confinement Criteria," for which Boulton claims he was advised he was eligible by prison staff.[4]  Boulton presents evidence that this process was begun;[5] however, he was never released and was advised that he met the home confinement criteria, but he had not served enough of his sentence to qualify for home confinement.

Boulton then formally requested release by a "Request for Administrative Remedy,"[6] which was reviewed and ultimately denied by Acting Warden S. Merendino.[7] Boulton appealed this decision, and his appeal remains pending.[8]  Having exhausted his administrative remedies under the First Step Act, Boulton now seeks compassionate release to home confinement from this Court.

Boulton claims his medical conditions and age (50) place him at a higher risk for contracting the coronavirus, combined with the fact that he is housed at the Oakdale Facility, which he contends has "specifically had a poor response to the pandemic."[9] Boulton also claims the 18 U.S.C. § 3553(a) factors support his request for compassionate release because he poses no threat to the community, was convicted of non-violent crimes, and is at minimum risk of recidivism.

The Government opposes Boulton's motion, arguing that his only real medical condition is hypertension, which the Court has held is not a "serious physical or medical condition" rendering one eligible for First Step Act relief.  Further, Boulton's evidence

---

[4] Rec. Doc. No. 47-2, p. 15.
[5] Rec. Doc. No. 47-2, pp. 16-17.
[6] Rec. Doc. No. 47-2, pp. 18 & 19.
[7] Rec. Doc. No. 47-2, p. 20.
[8] Rec. Doc. No. 47-2, p. 21.
[9] Rec. Doc. No. 47-1, p. 4.

actually demonstrates that Oakdale is successfully treating his hypertension. Finally, the Government maintains that the 18 U.S.C. § 3553(a) factors do not favor compassionate release because Boulton's crime, along with his history and characteristics set forth in his Pre-Sentence Investigation Report ("PSR"), do not establish that he does not pose a threat to the community. Moreover, Boulton has only served around 22% of his 51-month term of imprisonment, which would fail to reflect the seriousness of his crime.

## II.  LAW AND ANALYSIS

### A. Exhaustion of Remedies

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant **after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier**, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

It is undisputed that Boulton has exhausted administrative remedies under the First Step Act.

**B. Extraordinary and Compelling Reasons**

28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.

The Sentencing Guidelines policy statement appears at § 1B1.13 and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Additionally, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). **A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required**. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the

> defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances meeting the test for compassionate release.[10]

### 1. Boulton's Claims

Boulton claims he has a history of chronic medical conditions for which he takes the following medications: (1) Metoprolol Tartrate 50 mg – beta blocker that affects the heart and circulation; (2) Lisinopril 20 mg – ACE inhibitor to relax blood vessels ease circulation; (3) HydroChlorothiazide 12.5 mg - diuretic for kidney treatment; and (4) Sertraline 50 mg – anti depressant. Boulton also presents evidence that he has a lump on his testicles for which he has not been treated since his incarceration.

Thus, Boulton argues he has demonstrated "extraordinary and compelling reasons" as contemplated by the First Step Act warranting his release for the following

---

[10] *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019)(emphasis added).

reasons: he "is 50 years old which puts him at higher risk. He has heart, kidney and high blood pressure issues that also place him at higher risk. These are all conditions recognized as elevated risk factors for severe illness due to COVID-19. These are factors that make Bruce Boulton highly vulnerable to severe illness from COVID-19. Inmates, such as Bruce, in detention facilities and prisons are particularly vulnerable to infection."

### 2. Government's Opposition

The Government counters Boulton's claims, arguing that his medications are all primarily treating hypertension, and this Court, in *United States v. Clark* and *United States v. Alexander*, has repeatedly held that hypertension does not amount to a serious physical or medical condition rendering one eligible for compassionate release.[11] Further, the Government notes that the most recent CDC guidance reinforces the Court's holding in this regard, explaining that hypertension falls under the category of conditions that "might" present an increased risk, rather than conditions that present an "increased risk of severe illness."[12] The Government further argues that, because release is inappropriate based on a hypertension diagnosis, whether Oakdale can control that condition is irrelevant; nevertheless, Boulton's medical records demonstrate that Oakdale has made substantial progress towards controlling his hypertension.

The Government maintains that, in failing to identify a serious medical condition,

---

[11] *United States v. Clark*, 451 F.Supp. 3d 651, 656 n. 17 (M.D. La. 2020); *United States v. Alexander*, No. CR 14-126- JWD-EWD, 2020 WL 2468773 at *7 (M.D. La. 2020) (deGravelles, J.) (same); U.S.S.G § 1B1.13, p.s., comment. (n.1(A)(ii)).

[12] CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/needextra-precautions/people-with-medical-conditions.html (Aug. 14, 2020) (emphasis deleted). CDC, Scientific Evidence for Conditions that Increase Risk of Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra- precautions/evidence-table.html (July 28, 2020).

the issue of the risk presented at the Oakdale facility is irrelevant. However, the Government demonstrates the efforts taken at Oakdale, which did have a large outbreak at the beginning of the pandemic, to respond and control the spread at its facility. The Government points out that Boulton has not provided any evidence of Oakdale's current response to the pandemic. Presently, at Oakdale I where Boulton is housed, there is only one inmate and eleven staff who have confirmed, active cases of COVID-19.[13] Thus, the Government contends Boulton's references to Oakdale's circumstances in March, April, and May are not particularly relevant at this time.

In addition, the Government argues that, had Boulton made the showing of a serious medical condition, the question becomes whether that medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[14] This determination addresses whether a correctional facility can safely care for the inmate. In other words, the question is whether Oakdale has responded appropriately to Boulton's hypertension in light of COVID-19. The Government presents evidence showing that "Oakdale is substantially controlling his hypertension."[15]

Boulton claims his age, hypertension, heart, kidney, and testicular issues qualify as "serious medical conditions" under the First Step Act. The Government attached Boulton's recent medical records, which it contends demonstrates that Boulton has failed to carry his burden for a number of reasons.

First, as discussed above, the Government maintains that hypertension is not a

---

[13] BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed Aug. 19, 2020).
[14] U.S.S.G § 1B1.13, p.s., comment. (n.1(A)(ii)).
[15] Rec. Doc. No. 56, p. 8.

serious medical condition, especially where controlled, entitling one to compassionate release. The Government cites to Boulton's medical records, which reveal that:

> BOP has taken his blood pressure nine times. Exhibit C at 58-59. Three of those measurements were taken in early to mid-February 2020 and those are his three highest readings: 151/92, 159/97, and 156/90. Exhibit C at 59. His later readings (from February to June 2020) are substantially lower: 139/88, 117/76, 141/89, 138/83, 127/78, and 142/79. Exhibit C at 58-59. Boulton's blood pressure appears to have lowered to more manageable levels because of medication provided by BOP. On February 12, 2020, BOP medical staff renewed prescriptions for two hypertension medications (Lisinopril and Metoprolol) and added a new hypertension medication: hydrochlorothiazide. Exhibit C at 27. This mixture seems to have had a beneficial effect on Boulton's blood pressure. His records also indicate that medical staff should be notified if his blood pressure persists over 140/90 and that does not seem to be the case at present. Exhibit C at 28, 56.[16]

Second, the Government notes that Boulton claims he takes, in addition to Lisinopril for hypertension, Metoprolol for an erratic heart rate and hydrochlorothiazide for kidney issues.[17] However, the Government points out that all three of these medications have the same notation: "Indication: Essential (primary) hypertension."[18] Indeed, Boulton's evidence regarding these medications is a single page of notebook paper with copies of his four prescriptions, including the Sertraline taken for his depression. However, the page produced has handwritten notes to the side of each prescription of "heart rate," "hypertension," and "kidney issues fluid."[19] There is no identification who wrote these notes or if this document was generated by Oakdale medical staff rather than Boulton or his counsel. The official medical records from Oakdale submitted by the Government demonstrate that Boulton was treated primarily for hypertension and depression, and the medications prescribed above were all noted

---

[16] *Id.* at p. 15 (citing Rec. Doc. No. 60 at pp. 27-28; 56; 58-59).
[17] *See* Rec. Doc. No. 47-2 at p. 26 & Rec. Doc. No. 48-1 at p. 5.
[18] Rec. Doc. No. 60, p. 27.
[19] Rec. Doc. No. 47-2, p. 26.

in Boulton's medical records to be for the treatment of hypertension and depression.

Third, the Government maintains Boulton's age does not necessarily place him at a higher risk of contracting COVID-19.  While the Government acknowledges that the CDC recognizes that "older people are more susceptible to negative health outcomes,"[20] the Government also notes that "the CDC has not declared that persons who are 50 years old (like Boulton) have an increased risk of severe illness. Rather, the CDC explained that risk simply increases with age:

> As you get older, your risk for severe illness from COVID-19 increases. For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older.

CDC, Coronavirus Disease: Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (Aug. 16, 2020)."[21]

Finally, the Government argues Boulton has presented no evidence that the lump on his testicles, confirmed by his medical records, increases his risk for contracting COVID-19.

   3. Analysis

The Court finds that Boulton has failed to present evidence of extraordinary and compelling reasons to justify his compassionate release.  He offers scant evidence supporting the multiple medical conditions he claims render his health needs an extraordinary or compelling reason for his immediate release; rather, he primarily provides evidence that he is 50 and takes medication for hypertension, which appears

---

[20] Rec. Doc. No. 56, pp. 15-16 (citing CDC, Coronavirus Disease: Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/older-adults.html (Aug. 16, 2020)).
[21] Rec. Doc. No. 56, p. 16.

to be controlled by the BOP. Notably, this Court rejected similar "fear of contracting" arguments in *United States v. Clark*[22] and *United States v. Alexander.*[23] Moreover, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."[24]

Accepting the medical evidence that Boulton suffers from hypertension, courts have held that this medical condition alone does not constitute a greater-than-average risk. The Court acknowledges that, if an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons" where such a condition is found to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.[25] However, general hypertension, as opposed to pulmonary hypertension, for example, is **not** one of the conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID-19.[26] Further, Boulton has not alleged that his hypertension has caused his medical condition to deteriorate, that his condition has worsened in prison, or that this condition is not adequately controlled by medication.[27]

---

[22] 2020 WL 1557397, *4-*5 (citing *United States v. Gileno*, 2020 WL 1307108 (D. Conn. Mar. 19, 2020); *United States v. Eberhart*, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020)).
[23] 2020 WL 2468773 (M.D. La. May 13, 2020).
[24] *United States v. Wright*, 2020 WL 1976828, *5 (W.D. La. Apr. 24, 2020).
[25] *See* U.S.S.G. § 1B1.13, comment. (n.1(A)(ii)(I)).
[26] *See* Centers for Disease Control, "At Risk for Severe Illness," available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 4, 2020) (identifying "pulmonary hypertension" as risk factor, but not ordinary hypertension).
[27] *See e.g., United States v. Koons*, 2020 WL 1940570 (W.D. La. Apr. 21, 2020); *United States v. Mazur*, 2020 WL 2113613 (E.D. La. May 4, 2020)("Additionally, finding that Mazur's medical conditions combined with the threat of COVID-19 is an extraordinary and compelling reason would potentially have far-reaching

The Court also acknowledges the effects of COVID-19 pandemic and the heightened risk at the Oakdale facilities. However, the Government presented evidence of significant efforts being undertaken at Oakdale to respond to the pandemic and to identify inmates eligible for release pursuant to Attorney General William Barr's memorandum instructing the BOP to maximize transfer to home confinement "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations."[28]  The Government also maintains that, while incarcerated, Boulton has access to medical care, screening, and sanitation supplies, and there is no record evidence that his living conditions, if released, would be comparably safer. The BOP's denial of Boulton's administrative request for home confinement further supports the Court's findings herein:

```
Program Statement 5050.50, Compassionate Release/Reduction in
Sentence: Procedures for Implementation of 18 U.S.C §§ 3582 and
4205{q), Section 3, page 4, Requests Based on Medical Circumstances,
outlines the following criteria for consideration for a
Compassionate Release/RIS: "(a) Terminal Medical Condition. RIS
consideration may be given to inmates who have been diagnosed with
a terminal, incurable disease and whose life expectancy is
eighteen (18) months or less, and/or has a disease or condition
with an end-of-life trajectory under 18 USC §3582{d)(1). (b)
Debilitated Medical Condition. RIS consideration may also be
given to inmates who have an incurable, progressive illness or
who have suffered a debilitating injury from which they will not
recover. The BOP should consider an RIS if the inJnate is
completely disabled, meaning the inmate cannot carry on any self-
care and is totally confined to a bed or chair; or capable of
only limited self-care and is confined to a bed or chair more
than 50% of waking hours." According to the Clinical Director,
you do not meet the criteria for Compassionate Release because
you have not been diagnosed with a terminal, incurable disease
and his life expectancy is not eighteen months or less.  You do
```

---

implications, as to any defendant currently incarcerated at Mazur's facility with a serious, albeit non-terminal, compromised immune system.).

[28] *See* Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), available at https://www.justice.gov/file/1266661/download (last visited 4/20/2020).

```
not suffer from a chronic or serious medical condition related
to the aging process and the Bureau of Prisons (BOP) can provide
conventional treatment to improve your condition.[29]
```

Boulton's substantial medical records demonstrate that the BOP has, indeed, been providing conventional treatment to improve Boulton's conditions. Accordingly, he has failed to demonstrate extraordinary and compelling circumstances as contemplated by the First Step Act.

### C.  18 U.S.C. § 3553(a) Factors/Danger to the Community

Because Boulton has failed to present evidence of extraordinary and compelling reasons warranting his immediate release, the Court need not reach consideration of these factors.

Accordingly, Boulton's *Motion for Reduction in Sentence and Compassionate Release*[30] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>October 20, 2020</u>.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[29] Rec. Doc. No. 47-2, p. 20.
[30] Rec. Doc. No. 47.